

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JAN 25  PM 12: 58

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NOAH GALLIEN | CIVIL ACTION |
| VERSUS | NO. 05-3651 |
| RICHARD STALDER  ET AL. | SECTION "N" (2) |

### REPORT AND RECOMMENDATION

Plaintiff, Noah Gallien, is a convicted prisoner currently incarcerated in the Washington Correctional Institute ("WCI") in Angie, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Richard Stalder, James Miller, Bessie Carter, Doctor Thomas, Nurse Diane and Kathy McGinnis. He alleges that while incarcerated in WCI he has received inadequate medical treatment for a back injury suffered in a fall on November 21, 2004.  He seeks monetary damages and injunctive relief. Record Doc. No. 1 (Complaint at ¶ V).

On January 5, 2006, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Phyllis Glazer, counsel for defendants.  Plaintiff

____ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No _____

was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179

(5th Cir. 1985), and its progeny.

### THE RECORD

Plaintiff testified that he is currently incarcerated in WCI based on a drug

conviction in 2002, for which he is serving an 18-year prison sentence. He confirmed

that he asserts a single claim in this case that he slipped and fell in WCI on November

21, 2004, and that since that time he has received inadequate medical care for the

injuries suffered in that fall.

Gallien testified that on November 21, 2004, he was walking to the bathroom, and

the floor was wet because of the humidity. He said that as he turned the corner he

slipped and fell, injuring his back. Gallien said that when he fell Sgt. Miller and Lt.

Kellis were standing nearby, so plaintiff informed them he was in "serious pain," and the

officers called for a gurney. Plaintiff testified that when the gurney arrived about 15 or

20 minutes later, he was picked up and informed the medical technician that he suffered

from a ruptured disc, and he was taken to the WCI infirmary. Gallien confirmed that his

ruptured disc condition existed before his fall at WCI, but the fall made it worse.

Plaintiff clarified that he does not assert a claim in this case that his fall was

caused by defendants, only that the medical treatment he received for injuries resulting

from the fall was inadequate. As to his medical treatment, plaintiff stated that his

2

medical records produced in response to my order, Record Doc. Nos. 5 and 13, were incorrect in a couple of instances. First, he said, the records incorrectly state that he had requested to be released from the WCI infirmary on the day after he was brought there, when in fact he had not asked to be released. Second, he said, the records failed to reflect a prescription he received from a doctor in July 2005 for a special mattress, that he in fact never received. Plaintiff testified that in all other respects the medical records were accurate.

Gallien stated that when he was initially taken to the WCI infirmary, he stayed there overnight. He confirmed the notation in his medical records that x-rays were taken of his back in the infirmary at WCI on the day after his fall. He stated that these first x-rays were inconclusive and that a second set of x-rays had to be taken in December. Plaintiff acknowledged that the report concerning the initial x-rays indicated that the L5-S1 area was partially obscured but that the L5 area showed some spondylosis that could be related to recent trauma.

Gallien testified that on the day after his fall he was sent from the infirmary back to his regular WCI dormitory. He confirmed the reference in the medical records that he had been given one Vicodin for pain while in the infirmary and another the next morning when he was released. He also confirmed the indication in the medical records that he was provided with a crutch before leaving the infirmary. Gallien stated that he

had not previously needed a crutch, but that he has continued to use the crutch ever since the fall.

Plaintiff testified that the only medication in addition to the Vicodin that he has received was a bottle of four or five Tylenol tablets provided to him when he was released from the infirmary, which he said he had used.  He said he was later prescribed Motrin and Ibuprofen, but he could not use it because it gives him stomach problems.

Gallien stated that he was seen by Dr. Thomas at WCI about nine days after his fall, and Dr. Thomas told him another x-ray would have to be taken because the first one was inconclusive.  He confirmed that the second x-ray was taken on December 7, 2004, and it showed no fracture or spinal misalignment, but he complained that his problem is a disc problem.  Plaintiff testified that he was subsequently given an MRI on March 28, 2005, at a clinic in Bogalusa where he was taken by jail officials. He confirmed the indication in the MRI record showing disc bulging and narrowing.  He said all he knows about his condition is that he hurts.  He testified that he had again been taken to the infirmary at WCI as recently as that morning, where he was given two Motrins and placed in a wheelchair.

Gallien testified that when he returned from having his MRI at the clinic in Bogalusa, he was taken to see Dr. Thomas at WCI again.  He stated that at that time Dr. Thomas changed his duty status and then saw him again on April 20, 2005, at which time

4

Dr. Thomas told him he thought he had a disc problem of some kind and would schedule him for examination and possibly surgery with a neurologist. Gallien confirmed the indication in the medical records that he was taken from WCI on July 25, 2005 to a neurological clinic at Charity Hospital in New Orleans, but after the neurosurgeon examined him, the doctor said he could not schedule surgery until he was provided with a complete set of Gallien's x-rays and other records, but he did prescribe a special mattress, which was never provided.

Plaintiff testified that he has not been to a hospital or a doctor for his back condition since July 25, 2005. Gallien said that he was aware that Charity Hospital in New Orleans had been seriously damaged and closed since late August 2005 because of Hurricane Katrina, but stated that he was subsequently told by Dr. Thomas at WCI in October 2005 that he would be rescheduled to be taken to Huey P. Long Hospital in Baton Rouge (actually Earl K. Long Hospital) for another neurological appointment. At the time of the hearing, he had not yet heard when his new appointment was scheduled.

Plaintiff testified that he continues to experience severe back pain with numbness in his right leg. He rated his pain on a scale of ten as "eight and a half." He said his condition is "not getting any better."

After the conference, defense counsel spoke with medical personnel at WCI. She received and sent to the court a copy of a written request, which is attached hereto for

filing in the record, sent from WCI to Earl K. Long Hospital in Baton Rouge seeking an appointment with a neurologist concerning Gallien's back condition.

## ANALYSIS

I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at

such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

At this time, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading[1] at this time.

II.    MEDICAL CARE

Gallien complains that he has received inadequate medical treatment for exacerbation of his preexisting back problems when he slipped and fell at WCI. Gallien

---

[1]Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

was a convicted prisoner at all relevant times about which he complains.  In <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. <u>Id</u>. at 105-06; <u>accord</u> <u>Gregg v. Georgia</u>, 428 U.S. 153, 182-83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Farmer v. Brennan</u>, 114 S. Ct. 1970, 1984 (1994).  The <u>Farmer</u> definition applies to Eighth Amendment medical claims. <u>Reeves</u>, 27 F.3d at 176. The Fifth Circuit has reiterated in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), that the deliberate indifference standard applies to convicted prisoners like Gallien.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." <u>Farmer</u>, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show deliberate indifference to his "serious medical

needs" to satisfy this prong.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind.  Farmer, 114 S. Ct. at 1979 (citing Wilson, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 1979.

"The Supreme Court has recently reaffirmed that 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 1391 (1997) . . . .  The 'deliberate indifference' standard permits courts to separate omissions that 'amount to an intentional choice' from those that are merely 'unintentionally negligent oversight[s].'"  Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  Norton, 122 F.3d at 291.

In this case, plaintiff's allegations negate any inference that defendants acted with deliberate indifference to plaintiff's serious medical needs.  Initially, it cannot be

concluded with certainty that the exacerbation of back problems Gallien described presented serious medical needs that posed a substantial risk of harm during his incarceration at WCI. See Lusk v. Dallas County Sheriff's Dep't, No. 3:00-CV-0662L, 2002 WL 31757706, at *4 (N.D. Tex. Nov. 29, 2002) (Lindsay, J.) (herniated disc and degenerative spinal disease not serious medical needs); Nelson v. Rodas, No. 01CIV7887RCCAJP, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002) (Peck, M.J.) (back spasms and pain not a serious medical need); Solomon v. Moore, No. 97 Civ. 0201(KTD), 2000 WL 385521, at *2-3 (S.D.N.Y. Apr. 14, 2000) (Duffy, J.) (when plaintiff was able to walk and function normally despite neck, back and groin pains, he had no serious medical needs).

For purposes of this report and recommendation, however, I will assume that Gallien's testimony and written submissions adequately allege a serious medical need for purposes of constitutional analysis. See, e.g., Rutherford v. Medical Dep't, No. 02-1279, 2003 WL 22207625, at *3 (10th Cir. Sept. 24, 2003) (plaintiff had serious medical need when MRI showed nerve damage and pressure on sciatic nerves, requiring surgery at discs L3, L4, and L5); Palermo v. Correctional Med. Servs. Inc., 133 F. Supp. 2d 1348, 1359 (S.D. Fla. 2001) (Moreno, J.) (plaintiff who suffered from constant, severe back pain that greatly limited his mobility and had ruptured spinal disk, for which surgery had been recommended, had serious medical need); Weeks v. Chaboudy, 984 F.2d 185, 187

(6th Cir. 1993) (plaintiff who was paralyzed below waist and required wheelchair to move had serious medical need).

Even making that assumption, Gallien has alleged facts, confirmed by the medical records, that negate any conceivable inference of deliberate indifference by jail officials. Plaintiff's complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical attention while incarcerated in WCI. Plaintiff was taken to the prison infirmary shortly after his fall, where his back was x-rayed and he was provided with a crutch and medications, including Vicodin and Tylenol, for pain. He was subsequently seen again by a doctor at the jail who ordered additional x-rays and an MRI. In addition, prison medical personnel had Gallien transported to a specialty clinic for examination by another doctor and have recently requested another appointment with a specialist so that plaintiff may be seen by another neurologist concerning his back condition, in light of the destruction of Charity Hospital in New Orleans by the recent hurricane. To the extent, plaintiff may allege a delay in being provided with medical care, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

First, mere delay in receiving care is not in and of itself a constitutional violation. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Wesson v. Oglesby, 910 F.2d

278, 284 (5th Cir. 1990); Simons v. Clemens, 752 F.2d 1053, 1056 (5th Cir. 1985). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 302. The delay about which plaintiff complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes.  See Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Wesson, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs).  No such permanent loss resulting from delay has been alleged in this case at this time.

Second, while it is clear from plaintiff's allegations and testimony that he is not satisfied with the speed or effectiveness of his medical care, it is equally clear that the medical care provided has been constitutionally adequate.  Certainly, no finding of deliberate indifference to his medical needs can be made based on this record, which includes frequent attention by medical personnel, diagnostic testing and the provision of medication for his complaints.

Contentions like Gallien's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citing Mendoza, 989 F.2d at 193) (active treatment of prisoner's serious medical condition that ultimately resulted in death does not constitute the requisite deliberate indifference, even if the treatment was negligently administered); see Norton, 122 F.3d at 291-92; Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference).

For all of the foregoing reasons, plaintiff's complaints in this case about his medical care fail to state a claim for violation of his constitutional rights at this time sufficient to obtain relief under Section 1983. **Defendants are instructed, however, that they must continue to arrange for plaintiff's treatment, which has not yet been completed, and that any future deliberate indifference to plaintiff's continuing back problems may expose them to liability.**

14

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___25__th___ day of January, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

15



CHARLES C. FOTI, JR.
ATTORNEY GENERAL

**State of Louisiana**
DEPARTMENT OF JUSTICE
P.O. BOX 94005
BATON ROUGE
70804-9005



RECEIVED

JAN 9 2006

CHAMBERS OF
U.S. MAGISTRATE JUDGE
JOSEPH C. WILKINSON, JR.

## TRANSMITTAL COVER SHEET

**Date:** 1/5/06

**To:** MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR

**Re:** GALLIEN V. STALDER    05-3651 ("N" 2)

**FAX #** 504-589-7633

**Number of Pages:** 3 (including cover)

**From:** PHYLLIS GLAZER

(AAG) Secretary / Paralegal / Lawclerk

**Phone:** (225)326-6483
**Fax:** (225)326-6495

*File in the record attached to RSR J.T.*

_Comments to receiving party:_

_____

_____

_____

****If you have problems receiving this transmittal, contact:**
LOUIZA COLEMAN        at (225)326-6411

NOTE: This fax may contain highly confidential material from the Department of Justice, intended only for the name in the cover above. If your name is not on this sheet, please deliver this fax to the intended recipient. If you do not know who this person is, please call the phone number above to arrange the return or destruction of this material.



CHARLES C. FOTI, JR.
ATTORNEY GENERAL

**State of Louisiana**
DEPARTMENT OF JUSTICE
P.O. BOX 94005
BATON ROUGE
70804-9005

January 5, 2006

Magistrate Judge Joseph C. Wilkinson, Jr.
**VIA FAX**
504-589-7633

RE:   *Noah Gallien* (DOC No. 126696) v. *Richard Stalder, et al.*
      Docket No. 2005-3651 "N" (2)

Honorable Judge Wilkinson:

        Attached, please find the fax sent from WCI to Earl K. Long Hospital referring Noah Gallien to a neurosurgeon for a surgical consultation.  The fax was originally sent on October 20, 2005.

        Should you need any further information from me, please note the change in contact information below.  The Attorney General has reopened its New Orleans office so I will be available there.

                        Sincerely,

                        **CHARLES C. FOTI, JR.**
                        **ATTORNEY GENERAL**

            By:

                        Phyllis E. Glazer  (#27578)
                        Assistant Attorney General

                        Louisiana Department of Justice
                        Litigation Division

                        601 Poydras Street, Suite 1725
                        New Orleans, LA 70130
                        Phone:      504-599-1200
                        Facsimile:   504-599-1212

PEG/
Attachments

WCI

# Recommendation for Off-site Consultation or Testing

Name: *Noah Gallien*     Test or Clinic Recommended: *neuro surgery*

DOC#: *120609 6*        Referral date: *10/20/05*      Age: _____

Maxparole: _____   MaxFull GoodTime: _____   FullTerm: _____
                       (w/ Goodtime)

## Include Information about the Following in the Brief History below

Has he had prior treatment for this condition at another hospital or clinic?    Y/N (Y)

    If yes, where and when was the last visit?    *MCLNO*

Is there a previous disposition in his EHCC medical record about this problem?    Y/N (N)

    If yes, what was it?

Was there a previous denial of a request for an outside referral for this problem?    Y/N (N)

Was there a previous order to "die from the clinic or test" you are requesting?    Y/N (N)

    If yes, what is different now to justify a referral?

## Brief history:

Inmate: c persistant pain low back.
MRI = Bilateral spondylolysis at L5 with
7-8 mm of spondylolisthesis and associated
Broad-based disc bulging narrowing the foramen
Bilaterally

## Goal of Referral:

Eval for neuro surgery      W.C.I.

Provider recommending test or referral

## Disposition:

☐  This type of referral or test does not require approved by Dr. Regneau or designee.

☐  This referral or test is approved since it appears to be medically necessary.

☐  Do not schedule this referral or test at this time.

    ☐  Since this recommendation can safely wait to be done after this inmate goes home.

    ☐  Since the recommendation for outside referral is for a problem that I expect the on-site, primary care provider to handle without consultation in this clinical situation.

    ☐  Schedule the inmate to see Dr. Regneau for a second opinion about whether or not the referral is medically necessary.

    ☐  Since it is not apparently medically necessary because